BRIAN H GETZ, ESQ. (CSBN 85593)
LAW OFFICES OF BRIAN H GETZ
899 Ellis Street
San Francisco, CA 94109
Telephone: (415) 912-5886
Facsimile: (415) 358-4770
Email: brian@briangetzlaw.com

Attorney for Defendant
JASHANPREET SINGH

**IN THE UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASHANPREET SINGH,<br><br>Defendant. | Case No.: 3:24-CR-00174-DAD<br><br>**DEFENDANT JASHANPREET SINGH'S SENTENCING MEMORANDUM**<br><br>Date: May 11, 2026<br>Time: 9:30 a.m.<br>Crtm: Courtroom 4, 15th Floor<br>Judge: Honorable Dale A. Drodz |

## I. INTRODUCTION

Jashanpreet Singh appears before the Court for Sentencing after having pled guilty to Unlawful Dealing in Firearms (Count One) and Transfer or Possession of a Machine Gun (Count 2). These offenses stem from Mr. Singh's involvement in transactions that were not initiated by the Defendant, but by officers acting in an undercover capacity.

The United States Sentencing Commission Guidelines (November 2024) do not take into account the many factors that are unique to this case and which warrant a sentence outside of the advisory Guidelines by way of a Variance pursuant to 18 U.S.C. 3553(a)(1) and (2). These factors include, but are not limited to, specific factors related to the nature and circumstances of the offense, the history and characteristics of the Defendant, and the needs of sentencing. In addition, there exists a ground for a Departure based upon Mr. Singh's age pursuant to USSG 5H1.1.

## II. BACKGROUND

By way of background information, Mr. Singh is a young man of just 27 years of age. The Defendant has no prior criminal convictions nor any prior arrests of any kind involving any type criminal behavior. Mr. Singh has a lengthy history of legitimate employment completely unrelated to firearms, years of volunteer service to benefit children and others in need, and he aspires to pursue an education that will allow him to help others through employment in the health care industry (Presentence Report, Paragraph 65). Further, since his arrest, the Defendant has made extraordinary efforts to improve himself in many areas of his life by voluntarily enrolling in various educational courses offered by correctional authorities during his incarceration (Presentence Report, Paragraph 4). Mr. Singh is engaged to be married and he enjoys the support of his fiancé, family members, and many others in the community, all of whom have submitted letters of support attesting to Mr. Singh's good character, filed under separate cover.

## III. OFFENSE LEVEL COMPUTATIONS

### 1. Base Offense Level

The consequential Base Offense Level of 20 was determined in part by Mr. Singh's status as a "prohibited person" due to his immigration classification. The Defendant has been deemed as such because he overstayed his lawful entry as a non-immigrant visitor (Presentence Report, Paragraph 24). In this regard, what the Guidelines do not take into account is the Defendant was brought into the United States as a minor by his Parents (Presentence Report, Paragraph 58). Mr. Singh's Father decided to bring his family to the United States and leave their native country of India in order to escape the harassment his Father was subjected to by the political party with whom he disagreed and for financial reasons (Ibid.) This was not a decision that was the Defendant's to make, that decision belonged to his Father.

Since then, the Defendant went on to graduate from a local high school in Stockton, California and he has had a history of steady, yet not lucrative, employment. Although Mr. Singh is now an adult and able to make decisions for himself, for many years, he has been in what might

be characterized as an untenable situation because, if he returned to India, he would have to leave behind his entire family. All of the Defendant's immediate family members live here in the United States, and he has always lived with family members his entire life. Mr. Singh depends upon the support of members of his family to the point that he was, understandably, unable to conjure up the courage to leave the United States without them.

**2. Specific Offense Characteristics – Number of Firearms**

The number of firearms in this case has been calculated to be 34, and this number comports with the premise that Mr. Singh could be described as was more of a collector rather than a dealer of firearms as suggested by labeling of one of the statutes to which he has pled guilty. A dealer might be expected to be involved with a far larger number of firearms. In fact, Mr. Singh was described by his Mother as a collector of firearms and the other items that were seized from his residence. Although Mr. Singh's Mother was not identified as such, she is the individual referenced in the Presentence Report as having been present at the residence when authorities executed the search warrant at the Defendant's residence. At that time, the Defendant's Mother volunteered to Agents that her son ". . . collects grenades and explosives and has been collecting them for years. . . " (Presentence Report, Paragraph 19). Mr. Singh's Mother also readily acknowledged there were several firearms in the residence that her son "does not attempt to hide. . ." (Ibid.) At the time she made her statement, the Defendant's Mother had no idea how her statement would be used or interpreted, she was merely being honest and trying to be cooperative with authorities.

The conclusion Mr. Singh was not engaged in any type of a large-scale business involving the sale of firearms is further supported by the fact Mr. Singh has a long history of legitimate employment, although it is apparent his wages were not high and he has accrued considerable debt. As was noted in the Presentence Report, Mr. Singh is approximately $77,000 in debt and he has minimal assets (Presentence Report, Paragraph 74).

**3. Acceptance of Responsibility**

Without hesitation, Mr. Singh has readily admitted his offense conduct was wrong and he has offered his sincere apologies to all (Presentence Report, Paragraph 28). The Defendant only

hopes he will be given the opportunity to demonstrate to the Court that he will never again engage in any type of criminal conduct and prove himself worthy of a second chance.

## IV. MOTION FOR A VARIANCE PURSUANT TO 18 U.S.C. 3553(a)(1) and (2)

All of the following circumstances, some alone and others in combination, justify a Variance.

### A. NATURE AND CIRCUMSTANCES SURROUNDING THE OFFENSE

#### 1. The Defendant Was Brought Into The United States By His Parents As A Minor

Mr. Singh received the Base Offense Level of 20 in part because he was a "prohibited person" in terms of his immigration status here in the United States. The Defendant was brought into the United States legally as a minor by his Parents, and he was unable to independently leave as would have been required to at the age of 16, without his family (Presentence Report, Paragraph 24). Thereafter, as adult, Mr. Singh was unable to muster the courage to leave all of his family members behind by returning to his native country of India, and he instead chose be a contributing member to our country through employment and volunteerism.

#### 2. Mr. Singh Has A History Of Legitimate Employment Unrelated To Firearms As His Primary Source Of Income

Mr. Singh has a history of uninterrupted lawful employment, the total number of firearms in this case totaled 34, and he has been described as a collector of firearms. These circumstances demonstrate that Mr. Singh was not engaged in the sales of firearms as a vocation, and nor on a large scale, as may be implied by virtue of the titling of one of the charges to which he has pled guilty.

For many years, Mr. Singh has had a history of consistent, gainful, lawful and legitimate employment, completely unrelated to firearms (Presentence Report, Paragraphs 68 and 69). This has included ownership of a company and lawful employment related to the Defendant's vocation as a clinical technician collecting lab specimens. This company had a significant contract and

was entrusted with the collection of specimens by Quest, a well-known company. Mr. Singh has also worked for his father's trucking company in various capacities, and he has a commercial Driver's License. These vocational pursuits as well as his consistent employment history over the years demonstrate Mr. Singh's desire to first and foremost engage in legitimate employment and that is unrelated to firearms.

**3. Mr. Singh Was A Collector of Firearms**

Only as an aside, it may bear mentioning the United States Sentencing Commission Guidelines has recognized that those who possess ammunition and firearms for collection are entitled to a reduced Base Offense Level of 6, as opposed to the Base Offense Level of 20. However, it is undisputed the Base Offense Level of 20 was correctly applied in the Presentence Report. Although not applicable to Mr. Singh, this provision is mentioned only insofar as the Defendant's Mother, unaware of how her statement would be viewed after her son's arrest, described him as a collector. However, Mr. Singh did not qualify for this reduced Offense Level and instead the higher Base Offense Level was applied due to his status as a "prohibited person" referenced above relative to his immigration status, which was coupled in conjunction with the type of some of the firearms.

**B. HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

**1. Mr. Singh's Participation in Charitable Endeavors Include, But Are Not Limited To, Helping Children In Need During The Holidays**

It is especially noteworthy Mr. Singh has a commendable history of volunteering and engaging in altruistic activities. Mr. Singh has been making positive contributions to the community for many years, especially to children in need of and deserving of toys during the holidays. This fact far outweighs any implication to the contrary resulting from the negative perceptions associated with the motorcycle club with which he has been associated. Mr. Singh has always "prioritized working at community events and provided services or materials to the community, including participating in toy drives" (Presentence Report, Paragraph 31 and 68).

One example of the many charitable activities engaged in by individuals associated with

one of these organizations was reported in an article in a local publication in Stockton, California, the Defendant's city of residence. The article reads, in part, as follows:

> . . . club members hosted their 4th annual toy drive this past Saturday with music, pozole, tamales, drinks and live DJ music, as the clubhouse doors stayed open 11 a.m. to 4 p.m. to gather presents for the children in Stockton. . . The club will give out the presents at community centers and to those in the southern part of Stockton. . . 'It is a heartwarming event. It is a blessing for us to do the toy drive for the children,' . . . The donations come in from local friends and families of the club members and the toy drive collected between 5,000 and 6,000 toys last year. . . *Santa's Angels: Motorcycle Club's Toy Drive Collects Thousands Of Gifts For Stockton Kids*, Local News Matters, December 2023.

In addition, Mr. Singh is the founder of a non-profit organization designed to "give back" to his community by providing food to community members in need, as well as participating in toy drives for needy children (Presentence Report, Paragraph 68).

**4. Employment Goals Also Involve Helping Others**

Prior to his arrest for this offense, Mr. Singh was enrolled in a nursing program (Presentence Report, Paragraph 66). Mr. Singh's desire to become a nurse speaks to his unwavering determination to engage in not only legitimate employment, but also his desire to pursue a career that is focused primarily and importantly on helping and serving the needs of others. Nurses assist in navigating the many challenges faced by those experiencing a myriad of and sometimes extremely challenging health issues. "Nursing integrates the art and science of caring and focuses on the protection, promotion, and optimization of health and human functioning; prevention of illness and injury; facilitation of healing; and alleviation of suffering through compassionate presence. Nursing is the diagnosis and treatment of human responses and advocacy in the care of individuals, families, groups, communities, and populations in recognition of the connection of all humanity." *What is Nursing*? American Nurses Association, viewed April 1, 2026.

In pursuit of this goal, Mr. Singh obtained his CPR (Cardio-Pulmonary Resuscitation) certification from the American Heart Association, in order to be ready, willing and able to render life-saving aid to individuals that suffer heart failure in the community and before emergency

ambulance or other emergency personnel arrive on the scene (Presentence Report, Paragraph 67).

**5. Mr. Singh Demonstrated His Willingness to Lay Down His Life for all Citizens of the United States**

Mr. Singh sought to express his gratitude, indebtedness and dedication to our country by volunteering to enlist in the United States military, thereby offering and willing to risk sacrificing his own life to defend the citizens, foundations, and principals of the United States. Mr. Singh was extremely disappointed when his immigration status prevented him from doing so (Presentence Report, Paragraph 70).

**6. Mr. Singh Strong Support From Family Members and Other Members in the Community**

The Defendant has described his family as loving and supportive (Presentence Report, Paragraph 59). These feelings are mutual, as expressed in letters submitted to the Court from the Defendant's family members, and are attached. The Defendant has always lived with family members his entire life (Presentence Report, Paragraphs 59 and 60). Mr. Singh's Mother has been a homemaker all of her life, his Father served in the army in India for 17 years, and his Sister is a nurse (Presentence Report, Paragraph 59).

In addition, the Defendant enjoys a strong support system with many other members of the community, and these letters are also attached for the Court's review.

**C. NEEDS OF SENTENCING – 18 U.S.C. 3553(a)(2)**

Many of the goals of sentencing have already been clearly met, such as the need for the sentence to afford adequate deterrence to criminal conduct. Mr. Singh wishes to assure the Court he will never again engage in criminal conduct. Similarly, there is no longer a need to protect the public from further crimes of the Defendant as this goal has similarly already been accomplished. As far as the need to provide the Defendant with needed correctional treatment in the most effective manner, Mr. Singh could benefit from continued correctional treatment in the form of counseling to gain further insight regarding his conduct in this case. Mr. Singh has already begun this endeavor through courses he has completed during his incarceration for this matter. As demonstrated by his participation in these courses, Mr. Singh has shown he is

receptive to receiving any and all types of assistance, which are most effectively addressed in a community rather than a penal institutional setting. The remaining needs of sentencing, which include balancing the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, all can be met and assured through a sentence that is below what is simply an advisory sentence under the Guidelines.

## V. MOTION FOR A DEPARTURE

### USSG 5H1.1 – Age

### Maturity and Brain Development in Young Adults

Mr. Singh is 27 years of age. This is an age that has been recognized by the United States Sentencing Commission as the basis for a downward Departure, reflecting scientific advancements in knowledge of brain development and maturity for young adults. The relevant section, reads in part:

> *. . . A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risk seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation.*
>
> *The age-crime curve, one of the most consistent findings in criminology, demonstrates that criminal behavior tends to decrease with age. Age-appropriate interventions and other protective factors may promote desistance from crime. Accordingly, in an appropriate case, the court may consider whether a form of punishment other than imprisonment might be sufficient to meet the purposes of sentencing. . .*

Mr. Singh's maturity has greatly accelerated as a result of these proceedings. In addition, Mr. Singh's youthful age is indicative he is amenable to rehabilitation, and he has already demonstrated he possesses this attribute by virtue of his voluntary enrollment in courses offered by correctional authorities during the pendency of these proceedings (Presentence Report, Paragraph 4).

## VI. CONCLUDING REMARKS AND RECOMMENDATION

The felony convictions from these proceedings will undoubtedly adversely impact Mr. Singh's future plans, but he is determined to continue his efforts to be a productive member of the community in positive ways, as he has done repeatedly and in a variety of ways in the past. The Defendant is equally determined to continue to improve himself and the lives of others by expanding the various means by which he can contribute to the serving needs others, be it through volunteering or through education.

As a young man, Mr. Singh still has much to look forward to as he is engaged to be married to his fiancé, a nurse. In addition to his fiancé, the Defendant enjoys the unconditional love and support of his entire family, and they all will do whatever they can to continue to support him in any and all ways possible. Family members as well as others in the community have attested to Mr. Singh's positive character traits in the letters that have been submitted to the Court.

The Court is well aware that the calculations taken from the United States Sentencing Commission, Guidelines Manual (November 2024) are but a starting point in the analysis of determining the proper sentence to be meted out in any given case. In this case, there exists a basis for a Departure based upon Age - USSG 5H1.1.

Further, after a determination of the correct advisory Guidelines range, the Court must also consider the sentencing factors listed under 18 U.S.C. 3553(a) when fashioning a sentence. *Gall v. United States,* 552 U.S. 38, 49 (2007). In this case, a lengthy custodial sentence singularly based upon the Guideline range is inappropriate and a Variance is justified, given the nature and circumstances of the offense and the history and characteristics of the Defendant pursuant to 18 U.S.C. 3553(a). The statute relating to downward Variances further provides the Court with the authority to impose a sentence outside of the Guidelines, if there exists a mitigating circumstance of a kind, or to a degree, not taken into consideration by the sentencing Guidelines, pursuant to USSG 3553(b). In addition to these well-established principals, it must be emphasized the statute specifically requires that sentence shall be sufficient, but not greater than necessary, to comply with the various purposes of sentencing.

//

In addition, in accordance with 18 U.S.C. 3661, there is “no limitation shall be placed on the information concerning the background, character, and conduct of (the defendant) which a Court of the United States may receive and consider for the purpose of imposing an appropriate sentence.”

Case law is in accord with these guiding principles. As the Court is well aware, in United States v. Booker, 125 S. Ct. 738, 757 (2005), the Supreme Court abandoned the rigidity of the Guidelines, making the Guidelines advisory only and authorizing judges to consider the full range of relevant considerations in imposing a fair and reasonable sentence. The Court is mandated to impose a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing. Kimbrough v. United States, 552 U.S. 85, 101 (2017).

The goals of sentencing can best be achieved not by a mechanical application of the Guidelines, but instead by careful consideration and by weighing and balancing the specific and crucial factors that have been identified in this case that are in favor of Mr. Singh and that justify a Variance pursuant to 18 U.S.C. 3553(a) and a Departure under USSG 5H1.1. Therefore, it is respectfully recommended the Court invoke the authority of both of these provisions and sentence Mr. Singh to a lesser term than that which is only suggested by the advisory Guidelines.

DATED: May 5, 2026

Respectfully submitted,
LAW OFFICES OF BRIAN H GETZ

*/s/ Brian H Getz*

BRIAN H GETZ
Attorney for Defendant
JASHANPREET SINGH